The next case, United States v.—and I may or may not pronounce it correctly—McAdory. Good morning, Your Honors, and may it please the Court. My name is Anne Wagner from the Federal Public Defender's Office on behalf of Mr. McAdory. I'd like to reserve two minutes for rebuttal, if possible. I'm going to concentrate this morning on the supplemental issue raised in the party's briefing because it requires Mr. McAdory's conviction to be vacated. Mr. McAdory is innocent of the crime of being a felon in possession of a firearm under this Court's binding precedent in United States v. Valencia-Mendoza. At the time Mr. McAdory possessed the firearm, he lacked a prior conviction that was punishable by imprisonment for a term exceeding one year under Section 922G. You know, I agree with you that if we apply the reasoning of Valencia-Mendoza, you win, but that was a guidelines case, so you say it's binding. Is it really binding, given that this is a conviction case? Yes, Your Honor, it is binding, and that's because the overruling of United States v. Murillo in Valencia was never — was not dicta. United States v. Murillo was a 922G case, and the government in Valencia had argued that the Court could not rule in the defendant's favor because of Murillo. But the Court in Valencia did not in any way analyze the legislative history or the history of Section 922, did it? It didn't specifically address that, but like two other circuits that have reached this issue, it recognized that there's no distinctions to be made, especially when interpreting statutory text, you start with the text. Yeah, but don't you start with the text from when it was adopted? I mean, doesn't it matter when the text was adopted? Here, I think the Congress is working as a legislature does. It's creating a definition that will apply in multiple circumstances in the future. The fact that there weren't really mandatory sentencing guidelines in states at the time that Congress originally came up with this phrase doesn't matter because Congress established a test that should be applied in multiple circumstances. Counsel, subsection D of the statute prohibits somebody who's under indictment for a crime punishable by imprisonment for a term exceeding one year to receive a firearm. Under your interpretation, how would somebody ever know in Washington State whether somebody who's been indicted is punishable by imprisonment for a term exceeding one year or not? Well, in Washington, in order to be exposed to what the government is calling the statutory maximum, there would have to be both notice and findings eventually. Eventually, but how would the person who's been indicted know whether he could possess a firearm or not? Well, he would know whether he was facing exposure of more than a year or less than a year. He'd know when he was indicted? Yes, he could determine based on his offender score and the seriousness of the offense. It's a very simple sort of calculation that his attorney could do for him. So his attorney would have to do a calculation to let him know whether he could have a firearm or not? I think that the government's concession in United States v. Ireland, the 28J letter that I submitted yesterday covers this issue. It's actually about the indictment provision. And the government conceded that Carachuri and Valencia applied to subsection N as well. Although the government filed a pleading yesterday that said that that's not binding on them and the solicitor general has authorized the position they're taking here. Well, it's not binding on the court, whether it's an inconsistency that should... Well, it strikes me in response to Judge Bittner's very good question that it's possible that if someone's under indictment, the prohibition on firearm possession is broader. Because so long as he's under indictment, we don't know what the conviction is. If the indictment is broad enough, it may very well be that the potential punishment does exceed a year, but once we get to the conviction, well, the conviction may be narrower. So it's possible that when you're under indictment, the prohibition is broader. I don't see why you need to fight against that in order to maintain the position you've got here, because we're not talking indictment. But I see it entirely possible that the indictment provision is broader during the period of indictment and pre-conviction. I think that it's possible, but I do think that the fact that the Washington guidelines require notice before the exposure can be increased is important here. Well, subsection H of the statute says you can't have a gun if your employer has been convicted of a crime punishable by more than a year. How would somebody know whether that statute applied to them or not? Well, the United States Supreme Court has been concerned about the mens rea for these type of offenses, and I actually think that that might be a problem here. Well, it's a problem unless one decides that this isn't what the Congress had in mind when it passed the statute and it wanted a clear marker if the statutory maximum was more than a year, then you were covered whether you received the gun after your conviction, whether you were indicted, or whether you were employed by somebody who's convicted of something that has more than a year. Wouldn't it make sense for the Congress to have wanted there to be very clear markers in this statute which punishes people who are using drugs from having guns, punishes, I think it uses the word, but very, very broad range of conduct? Doesn't it make sense that Congress wanted clear markers? Congress could certainly have been clearer if it wanted to refer to the maximum sentence that any defendant could receive under this crime of conviction. But here it chose the term punishable, and it chose the term the conviction was punishable. And in Keratory, Rosendo, and Moncrief, the Supreme Court has emphasized that those terms require you to look at what the person was actually exposed to. They weren't looking at this statute. That's correct. They weren't looking at this statute. Congress could have been more specific, and Congress is welcome to amend the statute if it doesn't like this result. But I do think that the plain language of the statute and the fact that the Washington guidelines, we call them guidelines, but they're actually statutory. So even if it said statutory maximum, the maximum sentence that a particular defendant could have been exposed to, and thus what he was convicted of under 922G, is actually limited by statute to the highest point on the statutory range. Well, it says punishable convicted in any court of a crime punishable. Correct. So that's the crime that's established in this case by the Washington legislature. Correct, but the Washington legislature also established the sentencing guidelines ranges that a person who is convicted of a crime is subject to. And the judges and the juries in Washington have some discretion, correct? Well, the post-Blakely statute is pretty specific. So the juries have discretion to make findings, but that's in accordance with Blakely. Judges are very limited in the ways that they can impose upward departures beyond the sentencing guidelines. But they can impose an upward departure with notice to the defendant, correct? With notice and a finding on the record. And specifically, the two- So I've got a client, hypothetical to follow, I've got a client who's charged under the statute in Washington, and the judge does that, the sentencing judge does that, gives notice that he intends to go to 13 months and has a finding. And my client turns to me and says, what am I facing? Well, absolutely, you're facing a 13-month maximum in that instance, and you would be prohibited from possessing a firearm under 922G. So the specific aggravating- Does that answer that you just gave cast doubt on the correctness of our decision in Valencia? No, I don't believe so. Can you say more? Well, it sounds as though it's not all that mandatory. And the whole premise of our decision in Valencia is that it is mandatory, and therefore it can't go any higher than a year, and therefore the guideline doesn't apply. Well, it requires notice and a finding, and the specific instances in which the aggravating circumstance can go above the statutory range are extremely limited. And this is RCW 994A-535, upper departures and subsection 2. But I thought the premise of the argument that won in Valencia was I couldn't have been sentenced to more than a year. Mr. McAdory could not have been sentenced to more than a year, and particularly could not have been sentenced without notice and a finding in the judgment that he was exposed to higher than a year. Very different propositions. There they are. I think if you read Valencia, it is very clear that it's the standard sentencing range that the court is bound by, and that's absolutely the same as Mr. McAdory's situation. So neither of the aggravating circumstances in Mr. McAdory's case that, you know, So one is the stipulation of the parties. He didn't stipulate. The other only applies where there was a particularly high offender score, and Mr. McAdory was near the bottom of the range for the offender score. So neither of the circumstances was even available. So you're saying that in Mr. McAdory's circumstance, even if the judge had given notice of an impossible intent to sentence to a longer term, the judge could not have done that under Washington law? That's correct. He would have been reversed. I see. So your answer to Judge Hawkins' hypothetical is, well, that's just a hypothetical and certainly does not apply to Mr. McAdory because it couldn't have happened. Correct. That's the answer. Yes. Okay. Let's hear from the other side. Thank you. Good morning, Your Honors. May it please the Court. Michael Morgan for the United States. Judge Bennett hit on a very critical distinction. 922G is tied to the crime, not the conviction. It is not — it was not enacted and has never — and its predecessor statutes have never been enacted to be defendant-specific. They apply to a class of individuals. And when Congress enacted 922G, it legislated against a backdrop of 25 years at a minimum of predecessor statutes in which the term crime punishable by a term of imprisonment to exceed a year had a defined meaning, the statutory maximum. That was the only meaning it had when Congress enacted its predecessor statutes in 1968. It was the only meaning it had when Congress first defined a felony in the turn of the century, the turn of the 20th century. This is a term of art that Congress has used repeatedly and it has a fixed meaning. There's no reason to believe that the — when Congress enacted 922G, it intended any other meaning than — If we agree with you, do we have to go en banc to overrule Valencia? Because Valencia just overturned the case that has endorsed precisely the position you're taking. I understand, Your Honor. And the answer to that question is no, because Valencia-Mendoza was a guideline case. The issue before it was the meaning of 2L1.2. I understand that, but Valencia says the earlier case is overruled and that was the statutory case. I understand that the Court said that. Yes, it did. I understand the Court said that, but as a purely legal matter, that issue was not before the Court. So in the purest sense, it is dicta. It may be very persuasive dicta, but it is dicta nonetheless because the Court didn't have the question before it. And in particular, it didn't have the legislative history and the practice of Congress that predated the statute. And as the Court recently held last week in Arona, the same language can have different meaning in different statutes, identical language, depending on what congressional intent and purpose was. You should have been arguing the last case, the one we just heard. But that is in fact true, and that is in fact what we have here, is we have a statute and we have a long history of congressional use. And we know how that statute was interpreted by the courts. We know what Congress meant. I mean, I don't think there's any serious dispute as a historical matter what Congress meant. And at the end of the day here, the question before the Court is an issue of statutory construction, which is to determine Congress's intent. If Congress's intent is clear, that's the end of the matter. I mean, if Congress in 1986 had put a specific definition of crime punishable by imprisonment to mean the statutory maximum for the offense, not the guideline range, we wouldn't be here. Well, functionally, that is what happened. Congress was legislating against a historical backdrop in which this term had a fixed meaning. And we presume Congress legislates with knowledge of that not only history, but judicial interpretation. Go ahead, please. And Congress wanted to give clear notice that there were a long laundry list of persons who could not get guns because Congress was concerned about serious gun violence by people who shouldn't have guns. And that is correct. And it was, again, it was a classification. It's like we determined that a class of individuals should be prohibited, not individual defendants who have specific backgrounds that make their criminal history a little worse than someone else's. That's not what Congress was doing. They wanted bright lines. And as the Court pointed out, 922d involves the sale of a firearm. So the prohibited conduct is the sale or transfer to a person under indictment. So the criminal act happens when I make that sale. The fact that that person later on down the road maybe gets a conviction and then it turns out his guideline range is lower, well, that doesn't change the fact that at the time of the criminal act, I'm guilty of a crime because he was under indictment. And since we know that like you can't know a person's guideline range until sentencing happens for the very reason that we don't know if a jury is going to find an aggravator. Although your colleagues in Oregon didn't seem to feel that way. Well, I don't pretend to understand. I don't know if the Oregon system is exactly the same. And I would also point out that my colleagues in Oregon, I mean, they did make that concession a mere four days after Valencia Mendoza. So the department hadn't really gotten its ducks in a row about how it was going to respond to not only Valencia Mendoza, but how Valencia Mendoza should apply in other contexts. And I think that's the key here, is that contextually you need to effectuate Congress's intent. And I would submit to the Court that the pertinent precedent to rely on is the Rodriguez case, because there the Court was considering a very similar issue, whether, you know, the question of whether or not a Washington conviction has a maximum term of imprisonment to exceed 10 years. Well, but Valencia tells us exactly what it did with it. It said Rodriguez was decided when the Washington sentencing system was different. But I can — I understand that Rodriguez said that, but with respect, that's legal. So? Well, first of all, it's not binding again, because Valencia Mendoza is limited to its context of the guidelines. And as a matter of law, it's legally incorrect, to be frank, the reason being is the following. Under the guideline system that obtained in Rodriguez, while a district court had broader discretion than he does today, he still had to make findings and give notice. And in Rodriguez, the district court did not depart upward. That was not an upward departure case. It was a guideline sentencing case. So the fact that a court did not depart and that, in fact, the guideline range continued to attain was irrelevant. The Supreme Court told us it was irrelevant. It was like the fact that the court had the ability to depart, whether or not exercised in a given case, was the dispositive factor. Counsel, is your — is counsel for the defendant correct that with regard to his — I think it was three convictions — that there was no possibility from the beginning that in any of them he could be sentenced to more than a year? I can't speak to that authoritatively for the following reason. One of the reasons why a judge can depart upward is if he finds that a defendant's criminal history story is understated, mainly because he might have had a bunch of misdemeanor convictions that didn't count or other adjudications that didn't score. Now, at the time of his most recent felony, his adult felony, he had two prior felonies that didn't score. Now, I don't know, as a matter of Washington law, whether two unscored convictions would be a sufficient basis to depart upward, so I can't say. Does the judge have to give notice of that before the sentencing? Yes. I mean, a judge has to give notice of what he's going to do. Yes. But he obviously doesn't have to do it at the time of the indictment. No. Because there's been no guilty plea, or conviction. So at some point after conviction, the judge says, this is understated, so I'm considering departing upward and giving the person a sentence of more than a year. Yes. And I'm not — I should be more familiar, and I was a while back, but I'm not 100 percent sure that that notice has to be any time, like, substantially before sentencing. I think you can come up at sentencing and say, you know, we've got our pre-sentence report. I find — I'm concerned that his criminal history is understated. Counsel, you know, I want to hear from you. Let me try and pin this down to the extent I can. Are you taking the position in this case that, in fact, he could have been sentenced by a Washington judge to more than a year? I am not. And I'm saying that I don't know — Are you conceding, then, what the other side is saying, that he could not have been? I am not. I am saying that — But you're not saying the opposite. Okay. I'm saying — You're taking no position? I'm saying — no, it's not that I'm taking no position. It's that, as a matter of state law, I am not confident or — to say yes or no that these two — It sounds like you're taking no position. Well, I'm saying it's an open legal question, and I should point out that the courts have discretion. So it's entirely possible that an appellate court in Washington would say, in this particular an exercise of discretion that was provident. In a different case, it might say differently, because that's kind of how those things work. Is it in the record? Does the record in this case establish, as a matter of law, that he could not have received more than a year? I don't think that it does. I don't think that it says one way or another, because it requires a finding by the court that his — among other things, a finding by the court that his criminal history was understated due to unscored convictions. And, again, I'm — I firmly represent the court. I don't know whether two unscored convictions would be sufficient, as a matter of law, to justify that exercise of discretion. I just don't know. So I can't — I'm not trying to be obfuscate. I'm just — I don't know. Had the sentencing occurred — the state sentencing occurred in the underlying cases? The state sentencing had occurred with the most recent theft case — I'm sorry, theft of a vehicle case. That's the most recent felony predicate. The other thefts, the retail thefts, had not occurred. And there had been no sentencing at the time he committed this crime. So they couldn't be his predicate convictions, because — At the time he possessed the gun. The question is whether he committed a crime. Okay. Fair enough. At the time he possessed the gun. We couldn't be relying on those retail theft felonies to establish his status. So it would have to be his theft of a vehicle or his residential burglary conviction to establish his theft status. But again, I mean, to sum up, I understand the tension between the government's position and Valencia-Mendoza. But I would respectfully submit that it's not binding. And since it's not binding, and we have a clear indicator of what Congress intended the meaning of 922G1 to be, we must effectuate Congress's intent. Thank you, Your Honors. Did we take her over? Would you put one minute on the clock, please? Thank you. The government has referred a couple of times to the understated criminal history provision. The Washington courts have held that that provision is unconstitutional. And I would direct the committee to consider that provision. I would direct the court to the Hughes case and salts, which is cited in our brief. Rodriguez is ACCA. It doesn't have punishable by imprisonment for a term exceeding one year. Valencia distinguished Rodriguez both on the statutory text and on the fact that the Washington guidelines are mandatory now, not discretionary. The Oregon system is functionally identical to Washington's in all relevant respects. And the government conceded in its supplemental brief that he was not exposed to more than a year. That's their supplemental brief at three. So I think that they've already made that concession, and with respect to my friend, cannot walk it back at this point. Okay. Thank you. Thank you, both sides. United States versus McIndory submitted for decision.
judges: Hawkins, W. Fletcher, Bennett